## 9690, 9731.   LINDSEY v. INDEPENDENT ORDER OF PURITANS; and vice versa.

1. The life policy for $2,000 had lapsed before the death of the insured and before the defendant company, by written agreement, assumed the liabilities set forth in the insurance contract. The policy itself being void at the time the assumption of liability was undertaken by the defendant company, there was no liability against the original insurer, and hence none was assumed by the defendant company.

2. The other contract of insurance provided for the payment of 50 monthly installments of $20 each to the beneficiary upon proof of the death of the insured, but provided that if his death resulted solely from an "accident of travel," 100 monthly installments of $20 each should be paid to the beneficiary. It further provided that the beneficiary, "if the widow of the insured," should be entitled, "after having received 100 monthly payments provided for above," to a continued benefit of $20 per month during the full term of her widowhood, to cease upon her remarriage or death. There being no proof that the death of the insured resulted from an accident of travel, the beneficiary was not entitled to the 100 consecutive monthly installments of $20 each provided for by the contract, and was not entitled to the continued benefit of $20 per month during her widowhood, which was only due and payable after the 100 monthly payments provided for in the event of accidental death should have been received by her. Both the payment of the 100 monthly installments of $20 each and the continued benefit of $20 per month during her widowhood depended, by the terms of the contract, upon death of the insured resulting solely from an accident of travel.

3. The verdict in favor of the defendant on the two counts based on alleged liability under the two separate policies of insurance was demanded by the evidence, and the trial judge did not err in overruling the motion for a new trial.

DECIDED JANUARY 29, 1919.

Action on insurance policy; from Colquitt superior court—Judge Thomas.   April 10, 1918.

*Shipp & Kline,* for plaintiff.

*Douglas & Douglas, Parker & Gibson,* for defendant.

WADE, C. J. On June 27, 1910, The National Life Annuity Association, a mutual-benefit order, issued two certificates of insurance on the life of Ralph Clifton Lindsey, in which his wife was named as the beneficiary. One certificate (No. 2602) provided for the payment to Mrs. Lindsey, upon satisfactory proof of the death of the insured, of the sum of $2,000 in 100 consecutive monthly installments of $20 each; and provided further, that in the event of the accidental death of the insured before attaining the age of 60 years, the amount payable should be $3,000 in 100 consecutive

monthly installments of $30 each; but should the accidental death of the insured be caused solely by and. result from accident of travel, the amount payable should be $4,000, in 100 consecutive monthly installments of $40 each. This policy or certificate further provided that the widow of the insured should be entitled, "after having received 100 monthly payments provided for above," to a continued benefit of $20 per month during the full term of her widowhood, but that this continued benefit should cease upon her remarriage or death. The other certificate (No. 2603) provided for the payment to the wife of the insured, upon satisfactory proof of his death, of "the sum of $1,000 in 50 consecutive monthly installments of $20 each;" and also provided that in the event of the accidental death of the insured before attaining the age of 60 years, the amount payable should be $1,500 in 75 consecutive monthly installments of $20 each; but should the accidental death of the insured be caused solely by or result from accident of travel, the amount payable should be $2,000, in 100 consecutive monthly installments of $20 each. This policy or certificate further provided that "the named beneficiary under this certificate, if the widow of the insured, shall be entitled, after having received 100 monthly payments provided for above, to a continued benefit of $20 per month during the full term of such widowhood; but this continued benefit shall cease upon the remarriage or death of the beneficiary."

It appears, from the allegations in the first count of the plaintiff's petition, that the insured died on the 7th day of December, 1911, and proof of death was made under policy No. 2602, for $2,000, and the National Life Annuity Association began in February following to pay the $20 per month as stipulated therein, and continued to-pay the same until that policy or certificate was assumed by the Independent Order of Puritans, of Pittsburg, Pennsylvania, on April 6, 1912, which assumption was in writing and attached to the policy or certificate; and that the Independent Order of Puritans continued the payment of $20 per month as stipulated in the policy or certificate until 50 payments had been made, and thereupon ceased to make further payments. Plaintiff alleged that the defendant was due her the sum of $20 per month for each month beginning with February, 1916. The second count of the plaintiff's petition alleged the same facts as to the death of

the insured and the assumption of the obligation of the National Life Annuity Association by the Independent Order of Puritans, arising under policy No. 2603, for $1,000; the obligation sought to be enforced under that policy being, however, the payment of $20 per month, to continue during the full term of the widowhood of the beneficiary, Mrs. Lindsey, and until her remarriage or death, based upon the averment that the plaintiff was still the widow of Ralph Clifton Lindsey. The only assumption of risk by the defendant company was evidenced by a writing executed with due formality, in which the defendant agreed to assume the insurance contract liabilities "as set forth in the contract to which this rider is attached, being No. 2602, issued by the National Life Annuity Association of Atlanta, Ga.;" and this writing denominated a "rider" was dated April 6, 1912, and was sent to the beneficiary by the defendant, to be attached to said certificate No. 2602.

The undisputed evidence showed that policy No. 2602 for $2,000 had lapsed, and was absolutely void and of no effect, a considerable time before its transfer and before the death of the insured, and that only the policy for $1,000 was in effect at the time of his death; and therefore it is apparent that no liability under the policy for $2,000 rested on the defendant company, unless its assumption of liability under and by virtue of the contract signed by it, and which was by its terms to be attached to policy No. 2602, could or did of itself *create* such a liability or obligation. It is hardly necessary to say that if the policy for $2,000 was null and void at the time this assumption of liability was executed by the defendant, no obligation was thereby created against the Independent Order of Puritans. The original contract having been void absolutely by the failure on the part of the insured to pay the premiums or assessments provided for therein, there was no existing obligation on the part of the National Life Annuity Association of Atlanta, under this contract, in favor of the insured or his beneficiary at the time the assumption of liability was executed by the Independent Order of Puritans, and that assumption of liability merely declares that the defendant "agrees to assume the insurance contract liabilities *as set forth* [italics ours] in the contract to which this rider is attached, being No. 2602, issued by the National Life Annuity Association of Atlanta, Ga." Consequently, if the National Life Annuity Association had no liability under certificate No. 2602,

the Independent Order of Puritans assumed none. Certificate No. 2602, as a consideration for the contract, provides for "the payment of $3.22 monthly premium, and the further payment of all premiums regularly and promptly as they become due on the first day of each calender month hereafter." As this condition was breached by the insured, the policy had lapsed and become void, under the undisputed evidence, before the assumption of liability therein by the present defendant, and therefore no recovery could possibly be had thereunder.

There was evidence that this rider was issued by mistake and was intended for policy No. 2603, for $1,000; and, to bear out this evidence, there was testimony from the plaintiff herself that the $20 coupons surrendered by her on payment of the several monthly installments which she received, 50 in number, aggregating $1,000, were coupons from policy No. 2603 for $1,000—the policy which was in life at the time of the death of the insured. Likewise, the undisputed testimony showed that proof of death was made under policy No. 2603, and no proof of death was made under policy No. 2602. Therefore no recovery whatsoever was authorized by the evidence, under the first count of the plaintiff's petition, which sought to recover under policy No. 2602, which had lapsed long before the death of the insured and had not been revived by the assumption of liability referred to above and entered into by the defendant company on April 6, 1912. The only question, therefore, is whether or not, under the terms of certificate No. 2603, which was of force and under which plaintiff had already received at the time the suit was brought the sum of $1,000, which it is therein provided shall be paid upon proof of the death of the insured, the beneficiary is entitled to a further payment of $20 monthly during her life and widowhood. There was testimony to show that this policy should not have contained the provision as to a continued benefit of $20 per month during the life and widowhood of the beneficiary; which testimony was objected to when offered, and, under the pleadings in the case, was perhaps of doubtful admissibility. This testimony was undisputed, and, if competent and admissible under the pleadings, might have negatived the right of the plaintiff to the continued benefit sued for in the second count of her petition. In the view we take, it is not necessary, however, either to consider the various assignments of

error as to the admission of this and other testimony tending to attack or explain the contract as written or authorize a reformation thereof, or to consider the exceptions to the charge of the court touching this feature of the case; for, even if it be conceded that the evidence was inadmissible, and that the exceptions to the charge referred to were well taken, we think that no recovery could be had, under the contract as written, by placing any reasonable interpretation on the language therein employed.

The contract makes several different provisions as to the benefits arising thereunder. First, upon proof of the death of the insured, $1,000 shall be paid to the beneficiary in 50 consecutive monthly installments of $20 each. Second, in the event that the death of the insured be caused by accident before he attains the age of 60 years, the amount payable shall be $1,500, in 75 consecutive monthly installments of $20 each. Third, should the death of the insured be accidental and "be caused solely by and result from accident of travel, the amount payable shall be $2,000 in 100 consecutive monthly installments of $20 each." Fourth, "the named beneficiary under this certificate, if the widow of the insured, shall be entitled, after having received 100 monthly payments provided for above, to a continued benefit of $20 per month during the full term of such widowhood; but this continued benefit shall cease upon the remarriage or death of the beneficiary." It will be observed that there is no provision whatsoever for the payment of 100 consecutive monthly installments of $20 each, except in the case of the accidental death of the insured caused solely by and resulting from "accident of travel." It will be further observed that the provisions for the payment of a "continued benefit" of $20 per month during the life and widowhood of the beneficiary expressly stipulates that such beneficiary, "if the widow of the insured", shall be entitled to receive said continued benefit "*after* having received 100 monthly payments *provided for above* [italics ours]." The only 100 monthly payments "provided for above" which are referred to in the contract of insurance are to be paid in the event only that the deceased met his death solely on account of or as a result of an "accident of travel." Construing the contract altogether, and being not unmindful of the rule that contracts of insurance are to be construed most liberally in favor of the insured and against the insurer, without any reference what-

soever to the testimony or the pleadings relative to a mistake in the original writing of the contract, and without taking into consideration whether or not the reformation of the contract contended for by the defendant could be effected in this action under the pleadings and the evidence adduced, the plain, unambiguous, and reasonable meaning of the contract as it was actually written, and which is relied upon as the basis of a right of action in the plaintiff, is that *only* in the event the insured came to his death by an accident of travel would his beneficiary be entitled to 100 monthly installments of $20 each, and *only* in the event that his death occurred by reason of an accident of travel would she be entitled to receive, after the payment of the 100 monthly installments of $20 each due her in that event, the continued benefit of $20 per month during the remainder of her life and widowhood. No proof was offered to show that the death of the insured occurred as a result of an "accident of travel;" wherefore no obligation arose to pay to his beneficiary under the certificate of insurance which was in effect at the time of his death $20 per month for $100 consecutive months, due only in that event; and therefore no obligation existed under the provisions of the contract to pay a continued benefit of $20 per month during the full term of her widowhood, "after having received 100 monthly payments provided for above;" the only 100 monthly payments "provided for above" never having become due and payable. Under the construction we give the contract, and our view of the case as presented by the record, but one verdict could have been returned by the jury, and that was a verdict for the defendant on both counts of the petition. It is, therefore, unnecessary to consider the various alleged errors referred to in the amendment to the motion for a new trial, and as the verdict was demanded, the trial judge did not err in overruling the motion for a new trial.

*Judgment affirmed on main bill of exceptions; cross-bill dismissed. Jenkins and Luke, JJ., concur.*